FILED IN CLERK'S OFFICE
U S D C. Atlanta

JUL 2 2 2008 D-ak

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

---

VANDIVER ELIZABETH GLENN,
f/k/a GLENN MORRISON,

    Plaintiff,

       v.

SEWELL R. BRUMBY,
GLENN RICHARDSON,
CASEY CAGLE,
ERIC JOHNSON, and
ROBYN J. UNDERWOOD, all
in their official capacities,

    Defendants.

Case No.

# 1 08-CV-2360
## RWS

**JURY TRIAL DEMANDED**

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

1. Vandiver Elizabeth Glenn, by her attorneys, for her Complaint against

Sewell R. Brumby, Glenn Richardson, Casey Cagle, Eric Johnson, and Robyn J.

Underwood, in their official capacities (collectively, "Defendants"), alleges as

follows:

### NATURE OF THE ACTION

2. This Complaint asserts a civil rights action pursuant to 42 U.S.C. §

1983 for declaratory and injunctive relief to redress Defendants' violations of

Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. Defendants have violated the Constitution by terminating Plaintiff's employment because of her sex and her medical condition. Plaintiff seeks reinstatement to her position as relief for Defendants' violation of her right to equal protection, pursuant to the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States, and 28 U.S.C. § 2201, as an actual controversy exists within this Court's jurisdiction.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the events giving rise to this action occurred in this district and because Defendants are subject to personal jurisdiction in this district.

## PARTIES

5. Plaintiff Vandiver Elizabeth Glenn, f/k/a Glenn Morrison ("Glenn" or "Plaintiff"), is an adult citizen of the United States and resides in Atlanta, Georgia.

6. Defendant Sewell R. Brumby ("Brumby") is an adult citizen of the United States and is the General Assembly's Legislative Counsel. At all

material times, Brumby had the authority to make employment decisions regarding employees of the General Assembly, and was acting under color and authority of state law.  Brumby is sued in his official capacity.

7.  Defendant Glenn Richardson ("Richardson") is an adult citizen of the United States who is the Speaker of the Georgia House of Representatives.  At all material times, Richardson had the authority to make employment decisions regarding employees of the General Assembly, and was acting under color and authority of state law.  Richardson is sued in his official capacity.

8.  Defendant Casey Cagle ("Cagle") is an adult citizen of the United States who is the lieutenant governor of Georgia.  At all material times, Cagle had the authority to make employment decisions regarding employees of the General Assembly, and was acting under color and authority of state law. Cagle is sued in his official capacity.

9.  Defendant Eric Johnson ("Johnson") is an adult citizen of the United States who is the president pro tempore of the Georgia Senate.  At all material times, Johnson had the authority to make employment decisions regarding employees of the General Assembly, and was acting under color and authority of state law.  Johnson is sued in his official capacity.

10.  Defendant Robyn J. Underwood ("Underwood") is an adult citizen

3

of the United States who is the Georgia General Assembly's Legislative Fiscal Officer. At all material times, Underwood was acting under color and authority of state law. Underwood is sued in her official capacity.

## ALLEGATIONS OF FACT

11. In 2005, Glenn was hired by the Georgia General Assembly's Office of Legislative Counsel for the position of Legislative Editor.

12. Glenn's job duties consisted of editing proposed legislation and resolutions for grammar, spelling and format, and involved no policymaking responsibilities.

13. At the time Glenn was hired and during the substantial duration of her employment, she was perceived by Defendants and her co-workers to be male.

14. In 2005, Glenn was diagnosed with Gender Identity Disorder ("GID"), sometimes known as transsexualism.

15. GID is a recognized, serious medical condition identified in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) ("DSM-IV").

16. The DSM-IV's diagnostic criteria for GID include a strong and consistent cross-gender identification and a persistent discomfort with one's

anatomical sex, causing clinically significant distress or impairment.

17. Although she was determined to be male at birth, Glenn has a strong and consistent female gender identity.

18. The World Professional Association for Transgender Health ("WPATH") is the leading professional association for surgeons, doctors, medical researchers and others who specialize in the medical treatment of people with GID.

19. Based on decades of clinical experience and research, WPATH has promulgated medical standards of care for treating patients with GID.

20 The WPATH Standards of Care for Gender Identity Disorders ("Standards of Care") recognize that treatment is medically necessary for most people with GID. As described in the Standards of Care, the recognized therapeutic approach for GID includes living full-time as a member of the gender corresponding with one's identity, including in the workplace, a treatment known as the "real-life experience."

21. Glenn's health care providers determined that gender transition, including real-life experience, was a medically necessary treatment for Glenn's GID.

22. In October 2006, Glenn informed her immediate supervisor, Senior

Editor Beth Yinger ("Yinger"), that Glenn is a transsexual with a female gender identity and that she planned to undergo gender transition from male to female in 2007. Yinger was sympathetic and indicated that she did not foresee a problem.

23. On or around October 31, 2006, which was Halloween, Glenn came to work presenting herself in a feminine manner. Her attire consisted of a red turtleneck sweater, a black knee-length skirt, black boots, and tights. When Brumby saw Glenn, he sent her home, stating that Glenn was "inappropriately dressed." On that same day, two other employees in Glenn's office wore costumes to work. Brumby did not send those employees home.

24. In July 2007, Glenn notified Yinger of her intent to proceed with her gender transition.

25. In September 2007, Glenn loaned Yinger a photo album with several photographs of Glenn in which she had long hair, wore female clothing and makeup, and otherwise appeared feminine. Glenn also gave Yinger educational materials about workplace gender transitions.

26. Yinger looked at the pictures in the photo album and read the educational materials, and then passed the album and educational materials along to Brumby.

6

27. After receiving the album and educational materials, Brumby informed Yinger that he was consulting with the leaders of the General Assembly concerning Glenn.

28   On information and belief, Brumby consulted with Defendants Richardson, Cagle, and Johnson concerning Glenn's continued employment and a decision jointly was made to terminate her.

29. On the morning of October 16, 2007, Brumby met with Glenn.

30. Brumby fired Glenn after confirming with her that she intended to undergo transition from male to female and to present herself as a woman in the workplace.

31. Brumby informed Glenn that he was firing her because, in the view of Glenn's employers, her gender transition and presentation of herself as a woman would be seen as immoral, could not happen appropriately in the workplace in which Glenn worked, and would make other employees uncomfortable.

32. Glenn subsequently was given a written separation notice, which listed the "reason" for her termination as "termination."

33. Underwood signed the separation notice and certified that Glenn had been separated from work and that the information on the notice was true and

correct.

## FIRST CLAIM FOR RELIEF
### Brought under 42 U.S.C. Section 1983 for Violation of the Fourteenth Amendment to the United States Constitution – Discrimination Based on Sex (against all Defendants)

34.  Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

35.  By virtue of Plaintiff's sex (which includes the sex Defendants perceive Plaintiff to be and Plaintiff's gender identity), Plaintiff is a member of a particular and clearly identifiable group of people.

36.  Plaintiff has a female gender identity, although Defendants perceived her to be male.

37.  Plaintiff did not conform to Defendants' sex stereotypes regarding males because of her appearance and behavior at the time of her employment with the Georgia General Assembly's Office of Legislative Counsel and because of her intended future appearance and behavior.

38.  Defendants denied Plaintiff the equal protection of the laws by discriminating against her because of her sex, including her female gender identity and her failure to conform to the sex stereotypes associated with the sex Defendants perceived her to be.

8

39.  Defendants' actions were based on negative attitudes, private biases and fear, which are insufficient to justify a denial of equal protection.  To the extent that Defendants relied on the beliefs of others that Plaintiff's gender identity and expression are immoral, are inappropriate in the workplace, or would make others feel uncomfortable, acceding to such concerns is not a legitimate government interest.

40.  In terminating Plaintiff, Defendants treated her differently from other employees to whom she was similarly situated.

41.  Defendants' actions were undertaken purposefully and intentionally, and bear no substantial relationship to any important government interest.

42.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury, including, without limitation, violation of her constitutional rights, emotional harm, mental anguish, distress, humiliation, and indignity.

**SECOND CLAIM FOR RELIEF**
**Brought under 42 U.S.C. Section 1983 for Violation of the**
**Fourteenth Amendment to the United States Constitution –**
**Discrimination Based on Medical Condition**
**(against all Defendants)**

43.  Plaintiff repeats and realleges each and every allegation in the

9

foregoing paragraphs as if fully set forth herein.

44. As a transsexual who has been diagnosed with a serious medical condition, GID, Plaintiff is a member of a particular and clearly identifiable group of people.

45. Defendants denied Plaintiff the equal protection of the laws by discriminating against her because of her medical condition, GID. This discrimination manifested itself in not allowing Plaintiff to undergo medically necessary treatment for her GID. Receiving necessary treatment for a medical condition is an integral component of living with such a condition, and blocking that treatment is a form of discrimination based on the underlying medical condition.

46. Defendants' actions were based on negative attitudes, private biases and fear, which are insufficient to justify a violation of equal protection. To the extent that Defendants relied on the beliefs of others that Plaintiff's medical condition and treatment for that condition are immoral, are inappropriate in the workplace, or would make others feel uncomfortable, acceding to such concerns is not a legitimate government interest.

47. In terminating Plaintiff, Defendants treated her differently from other employees to whom she was similarly situated.

48.  Defendants' actions were undertaken purposefully and intentionally, and bear no substantial or rational relationship to any important or legitimate government interest.

49.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury, including, without limitation, violation of her constitutional rights, emotional harm, mental anguish, distress, humiliation, and indignity.

## JURY DEMAND

Glenn hereby demands a jury trial as to all claims that may be tried to a jury.

## RELIEF

WHEREFORE, Plaintiff prays for judgment:

(a) Awarding Plaintiff permanent injunctive relief reinstating her to her legislative editor position with the General Assembly;

(b) Declaring that Defendants' conduct violates the Fourteenth Amendment to the United States Constitution;

(c) Awarding costs for the suit herein, including Plaintiffs' reasonable attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988; and

11

(d) Awarding all other relief that the Court deems just and proper.

Respectfully submitted,

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

By: *Gregory Nevins* /CT

Gregory R. Nevins
GA State Bar No. 539529
Cole Thaler
GA State Bar No. 385137
730 Peachtree St. NE, Suite 1070
Atlanta, GA 30308
Telephone: (404) 897-1880
Facsimile: (404) 897-1884

ATTORNEYS FOR PLAINTIFF