# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

VANDIVER ELIZABETH
GLENN,

    Plaintiff,

v.

SEWELL R. BRUMBY, GLENN
RICHARDSON, CASEY CAGLE,
ERIC JOHNSON and ROBYN J.
UNDERWOOD, in their
official capacities,

    Defendants.

CIVIL ACTION NO.
1:08-CV-2360-RWS

## **ORDER**

This Case is before the Court on Defendants' Motion to Dismiss [Dkt. No. 8]. After considering the entire record, the Court enters the following Order.

## **Background**[1]

This case arises out of a dispute between Vandiver Elizabeth Glenn (hereinafter "Plaintiff" or "Glenn") and Defendants Sewell R. Brumby

---

[1] The Court makes no findings with regard to the facts as stated herein, but merely provides a factual background of the case drawn primarily from Plaintiff's Complaint [1].

(hereinafter "Brumby"), Glenn Richardson (hereinafter "Richardson"), Casey Cagle (hereinafter "Cagle"), Eric Johnson (hereinafter "Johnson"), and Robyn J. Underwood (hereinafter "Underwood") over alleged acts of discrimination against Plaintiff. Plaintiff has sued Defendants in their official capacity under the Equal Protection Clause.

In 2005, Vandiver Elizabeth Glenn was hired by the Georgia General Assembly's Office of Legislative Counsel for the position of Legislative Editor. Glenn's job duties included editing proposed legislation and resolutions for grammar, spelling, and format. Glenn was not involved in any policy-making functions. At the time Glenn was hired and during the substantial duration of employment, Defendants perceived Glenn to be male.

Plaintiff was determined to be male at birth, but later grew to have a female gender identity. In 2005, Glenn was diagnosed with Gender Identity Disorder (hereinafter "GID"). GID has been recognized as a medical condition in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) (hereinafter "the DSM-IV"). Subsequently, Glenn's health care providers determined that gender transition was a medically necessary treatment for Plaintiff's GID. They also

2

recommended that Glenn live full-time prior to the surgery, as a member of the female gender.

In October 2006, Glenn informed Senior Editor Beth Yinger (hereinafter "Yinger"), as the immediate superior, that Glenn was a transsexual with a female gender identity planning to undergo gender transition from male to female in 2007. Yinger indicated that she did not foresee a problem with Glenn's intentions. On October 31, 2006, Glenn came to work in a feminine manner of dress and comportment. Defendant Brumby sent Glenn home, stating that Plaintiff was inappropriately dressed.

In July 2007, Yinger was notified of Glenn's intent to proceed with the gender transition. In September 2007, Glenn provided Yinger with educational materials about gender transitions in the workplace. Yinger passed these materials on to Brumby, who informed Yinger that he was consulting with the leaders of the General Assembly about Plaintiff's situation.

On October 16, 2007, Brumby met with Glenn and confirmed that Glenn intended to undergo transition from male to female and to dress and live as a woman in the workplace. Brumby then fired Glenn because, in the view of Glenn's employers, gender transition surgery and presentation as a woman in

3

the workplace would be seen as immoral, could not happen appropriately in Glenn's workplace, and would make other employees uncomfortable.

Glenn commenced this action asserting two claims against all Defendants pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause for discrimination based on sex and based on medical condition. Plaintiff seeks no damages, but requests only equitable relief and costs associated with this action. All Defendants have moved to dismiss the claims against them.

## Analysis

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true all facts set forth in the plaintiff's complaint. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted); FED R. CIV. P. 12(b)(6). Further, courts must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); FED. R. CIV. P. 12(b)(6). To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Swierkiewicz

4

v. Sorema N.A., 534 U.S. 506, 512 (2002); FED. R. CIV. P. 8. See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553, 127 S.Ct. 1955, 1964 (2007) (citations omitted); Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005).

The Supreme Court has introduced the plausibility standard for motions to dismiss. See Twombly, 550 U.S. at 553-58. The non-movant's factual allegations must raise the right to relief above the speculative level. Id. at 553 The Supreme Court stressed that "[a]sking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [that is relevant]." Id. at 556.

With this standard as a foundation, the Court shall address Defendants' Motion to Dismiss. Plaintiff asserts two theories of recovery under the Equal Protection Clause of the Fourteenth Amendment: (1) discrimination based on nonconformity to sexual stereotypes and (2) discrimination based on the medical condition known as GID.

**I. Equal Protection in the Employment Context**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal

5

protection of laws." U.S. Const. amend. XIV, § 1. "The central mandate of the equal protection guarantee is that '[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.'" Lofton v. Sec'y of Dept. of Children and Family Svcs., 377 F.3d 1275, 1277 (11th Cir. 2004) (quoting Lehr v. Robertson, 463 U.S. 248, 265, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983)). The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Kicklighter v. Evans County School Dist., 968 F.Supp. 712, 720 (S.D. Ga. 1997), citing City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3253-54, 87 L.Ed.2d 313 (1985).

Section 1983 is a statutory vehicle for addressing the violation of civil rights. It provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C.A. § 1983. In a § 1983 action, a court must determine "whether the plaintiff has been deprived of a right secured by the Constitution and laws." Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). If a constitutional violation cannot be established, then a plaintiff's case is meritless. Id.[2]

## II. Class of One Equal Protection Claims

Defendants contend that Plaintiff is actually asserting a "class of one" claim. Defendants further argue that because class-of-one equal protection claims are barred in a public employment contest, that Plaintiff's claims fail as a matter of law.

---

[2] The Court notes that Defendants contend a higher pleading standard applies to § 1983 cases like the one before the Court, but Plaintiff is correct that the Eleventh Circuit has rejected such a pleading requirement and has clarified that to the extent that such a requirement still exists, it applies only in cases where qualified immunity is an available defense. See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) ("[A]ny heightened pleading requirements in § 1983 actions against entities that cannot raise qualified immunity as a defense are improper.").

"[Q]ualified immunity is a defense only to claims for monetary relief" and has no application to injunctive or declaratory relief, which are the sole remedies Glenn seeks in this case. D'Aguanno v. Gallagher, 50 F.3d 877, 879 (11 th Cir. 1995). Thus, no heightened pleading requirement applies in this case.

7

A class-of-one equal protection claim is one where the plaintiff alleges that he has been intentionally treated differently from others similarly situated, and there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 563 (2000). It is not necessary in such a case that the plaintiff show he or she is a member of a particular class of persons or that an entire class is the subject of discrimination. Id. at 564. The Supreme Court has held that a class-of-one equal protection claim has no place in a public employment lawsuit. Engquist v. Or. Dept. of Agric., 128 S.Ct. 2146 (2008).

However, the facts of this case and the allegations made by Plaintiff are not consistent with a class-of-one claim. Plaintiff does not claim that Defendants took action based on characteristics unique solely to Glenn. See N. Pacifica, LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."). Rather, Glenn alleges that Defendants engaged in discrimination based on Glenn's GID and failure to conform to sex stereotypes. These claims are not class-of-one claims, but rather classic equal protection claims in that they are

8

based on Glenn's membership in identifiable groups: the group of individuals who have been diagnosed with GID and the group of individuals who fail to conform to sex stereotypes.

It is not necessary for Plaintiff to allege that others in the workplace also violated sex stereotypes or had the same medical condition. See Jefferies v. Harris County Cmty. Action Ass'n, 615 F.2d 1025, 1034 (5th Cir. 1980) (holding that employer could not escape liability "because discrimination adversely affects only a portion of the protected class"); Graham v. Bendix Corp., 585 F. Supp. 1036, 1046 (N.D. Ind. 1984) ("the duty not to discriminate is owed *each* minority employee, and discrimination against one of them is not excused by a showing the employer does not discriminate against all of them.") (emphasis in original). The U.S. Supreme Court has made it clear that the Equal Protection Clause still applies "when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." Engquist, 128 S.Ct. at 2155. The facts, as alleged by Plaintiff, show that Glenn was treated differently and was fired because self-presentation as a woman would be seen as immoral by leaders in the Office of Legislative Counsel. See also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580,

AO 72A
(Rev.8/82)

592 (9th Cir. 2008) (rejecting defendant's characterization of plaintiff's equal protection claim as a "class of one" claim because his allegations "are not premised on 'unique treatment' but on 'a classification'" of plaintiff as affiliated with conservationists).

## III. Discrimination Claims

Claims based on disparate treatment under the equal Protection Clause must generally allege that (1) plaintiff is similarly situated with other persons who were treated differently; and (2) the difference in treatment was based on a constitutionally protected interest. Corey v. Ga. Bd. of Pardons & Paroles, 2007 U.S. Dist. Lexis 51673, *9-10 (N.D. Ga. July 16, 2007). An equal protection claim must allege that the plaintiff was a member of an identifiable group and that there was differential treatment "based on their membership of that very group." See Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279. The purpose of this analysis is "[t]o maintain focus on discrimination and to avoid constitutionalizing every state regulatory dispute." Griffin Indus. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007). The Court now turns to both of Plaintiff's claimed bases of discrimination.

10

### A. Discrimination based on Medical Condition

Plaintiff claims that Defendants denied Glenn equal protection of the law by discriminating based on her medical condition, GID. Plaintiff indicates that discrimination against those with serious medical conditions is class-based treatment subject to the Equal Protection Clause, pointing to the example of Doe v. City of Chicago, 883 F. Supp. 1126, 1138-39 (N.D. Ill. 1994). The plaintiffs in Doe alleged that they were denied employment because of their HIV positive status. Id. Indeed, it is well-established that the Equal Protection clause protects individuals with disability and illness (physical and mental) from discrimination by the states and that laws classifying individuals on such a basis must meet rational basis scrutiny. See City of Cleburn v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446 (1985) (" To withstand equal protection review, legislation that distinguishes between the mentally retarded and others must be rationally related to a legitimate governmental purpose.")

While it is true that Defendants' decision to terminate Glenn's employment did not pertain to Plaintiff's diagnosis with GID; the decision did pertain to Glenn's behavior, dress, and comportment in the workplace - all of which are doctor-recommended treatments for her GID. Because Glenn

11

pursued treatment for a medically-diagnosed condition, Defendants terminated her employment. Plaintiff sufficiently alleges a plausible claim on these grounds.

## B. Discrimination based on Non-Conformity to Sexual Stereotype

Plaintiff alleges that she is a member of a class based on sex, which is a suspect class. It is well established that individuals have a right, protected by the Equal Protection clause of the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment. Davis v. Passman, 442 U.S. 228, 234-35, 99 S.Ct. 2264 (1979). To make out such a claim, a plaintiff must prove that he or she suffered purposeful or intentional discrimination on the basis of gender. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65, 97 S.Ct. 555 (1977).

Plaintiff points to several courts that have held that adverse job action due to a failure to conform to an employer's sex stereotypes constitutes impermissible sex discrimination. See, e.g., Smith v. City of Salem, Ohio, 378 F.3d 566, 577 (6th Cir. 2004) (holding that transsexual firefighter was impermissibly terminated for failing to conform to employer's sex stereotypes, and had alleged facts that "easily constitute a claim of sex discrimination

12

grounded in the Equal Protection Clause of the Constitution, pursuant to § 1983"); Back v. Hastings on the Hudson Union Free Sch. Dist., 365 F.3d 107, 117-21 (2d Cir. 2004) (holding that claims premised on sex stereotyping theory sufficiently constitute claim of sex discrimination pursuant to § 1983, and observing that "the Equal Protection Clause forbids sex discrimination no matter how it is labeled"); Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 874-75 (9 th Cir. 2001) (holding that plaintiff can prove sex discrimination by presenting evidence that he was harassed based on perception that he had "feminine mannerisms" and a belief that he "did not act as a man should act"); Schroer v. Billington, 577 F. Supp. 2d 293 (D.D.C. 2008) (concluding that denying job to individual who disclosed his intent to transition to female constituted sex stereotyping and discrimination because of sex); Lopez v. River Oaks Imaging & Diagnostic Group, Inc., 542 F. Supp. 2d 653 (S.D. Tex. 2008) (holding that plaintiff could proceed to trial on impermissible sex stereotyping theory against employer who withdrew job offer and accused her of misrepresentation after learning of her transsexual status).

However, Defendants rightly indicate this Court has held as a matter of law that transsexuals as a group are not a suspect class based on sex. See, e.g.

13

Rush v. Johnson, 55 F. Supp. 856 (N.D. Ga. 1983). This conclusion is not at odds with the Supreme Court's interpretation of sex discrimination as defined in the Price Waterhouse case, where the Supreme Court explained that the prohibition of discrimination based on "sex" bars gender discrimination as well, including discrimination based on sex stereotypes. See generally Price-Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989). In Price-Waterhouse, the U.S. Supreme Court emphasized that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." Id. at 251.

In Price-Waterhouse, the Supreme Court essentially defined sex-based discrimination to include gender discrimination and discrimination based on sex stereotypes. In other words, while "transsexuals" are not members of a protected class based on sex, those who do not conform to gender stereotypes are members of a protected class based on sex. This is the same conclusion reached by the Sixth Circuit, which specifically held that some courts improperly "superimpose classifications such as 'transsexual' on a plaintiff, and then legitimize discrimination based on the plaintiff's gender non-conformity

14

by formalizing the non-conformity into an ostensibly unprotected classification." Smith, 378 F.3d at 577.

As noted above, "[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately." Thigpen v. Bibb County, Ga., Sheriff's Dept., 223 F.3d 1231, 1237 (11th Cir. 2000). Here, Glenn sufficiently alleges that she was treated differently than other employees by virtue of the fact that Plaintiff did not conform to sex stereotypes by explicitly alleging that Defendant denied her equal protection by treating her differently than others who were similarly situated based on her refusal to conform to sex stereotypes. She even specifically alleges that her non-conformity was the precise reason for her termination, as communicated to her by her superiors. Plaintiff has alleged that the driving force behind Defendants' actions was the failure to conform to sex stereotypes concerning how a man should look and behave. Thus Plaintiff sufficiently pleaded claims of sex stereotyping and gender discrimination.

## IV. Level of Scrutiny

As mentioned above, Glenn's equal protection claim based on medical condition must meet rational basis scrutiny. See Cleburne, 473 U.S. at 446. In

15

the context of a claim for violation of equal protection, "'if a law neither burdens a fundamental right nor targets a suspect class,' it does not violate the Fourteenth Amendment's Equal Protection Clause . . . 'so long as it bears a rational relation to some legitimate end.'" Rivera v. Allin, 144 F.3d 719, 727 (11th Cir. 1998) (quoting Romer v. Evans, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996)). Where no fundamental right or suspect class is involved, a plaintiff must show that (1) the plaintiff was treated differently from other similarly situated persons; and (2) the regulation is not rationally related to a legitimate government purpose. Bannum, Inc. v. City of Fort Lauderdale, 157 F.3d 819, 822 (11th Cir. 1998).

As the Eleventh Circuit has made clear, under rational basis review, a court must undertake a two-part inquiry.

> The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose-a goal-which the enacting government body could have been pursuing. The actual motivations of the enacting governmental body are entirely irrelevant. . . . The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether

16

> that basis was actually considered by the legislative body.

Joel v. City of Orlando, 232 F.3d 1353, 1358 (11th Cir. 2000) (quoting Haves v. City of Miami, 52 F.3d 918, 921-22 (11th Cir. 1995) (internal quotations and citations omitted)).

Furthermore, Glenn's equal protection claim based on her sex involves a classification requiring more than rational basis scrutiny. It is well established that classifications based on sex must be substantially related to an important government purpose. See United States v. Virginia, 518 U.S. 533 (1996) (explaining the heightened level of scrutiny that the government must meet in order to justify differential treatment based on sex).

Plaintiff has met the burden of showing that Glenn was treated differently than those similarly situated. In their Reply Brief, Defendants adopt the explanation given by Defendant Brumby when Glenn was fired as the justification for Glenn's treatment: "her gender transition and presentation of herself as a woman would be seen as immoral, could not happen appropriately in the workplace in which Glenn worked, and would make other employees uncomfortable." (Compl. [1] ¶ 31; Reply Brief [18] at 6.) Defendants do not

17

claim that Glenn's transition would have rendered her unable to do her job nor do they present any government purpose whatsoever for their termination of Plaintiff's employment. Indeed, "[n]o government interest has been identified . . . and this issue is properly a question to be decided should the court reach the merits of this claim." Doe v. U.S. Postal Service, 1985 WL 9446 (D.D.C. June 12, 1985).

Anticipated reactions of others are not a sufficient basis for discrimination. Romer at 634-35; Palmore v. Sidoti, 466 U.S. 429, 433 (1984); Cleburne at 448. Furthermore, unequal treatment fails even the most deferential equal protection review when "the disadvantage imposed is born of animosity toward the class of persons affected." Romer at 634. Plaintiff's Complaint clearly states a claim for denial of equal protection on both of the stated grounds.

## Conclusion

In conclusion, Defendants' Motion to Dismiss [Dkt. No. 8] is hereby **DENIED**.

AO 72A
(Rev.8/82)

**SO ORDERED**, this   25th   day of June, 2009.

_____
**RICHARD W. STORY**
United States District Judge